DECISION AND JUDGMENT ENTRY
Darrell Croston appeals from a judgment of the Athens County Municipal Court finding him guilty of operating a motor vehicle while under the influence of alcohol.
The Athens Police Department received a telephone call from an employee at Pizza Inn in Athens concerning a customer in their parking lot. Officer Groves and Officer Osborne, both Athens City Police Officers, responded to the scene. Upon arrival, Officer Groves observed a Ford Ranger pickup truck parked at the drive-thru window with a male occupant who appeared to be "passed out" in the driver's seat. The driver was sitting upright in his seat with his head tilted back and his mouth open. The vehicle was in gear and running. Officer Groves immediately went to the passenger's side of the vehicle, opened the door and turned the key to shut off the engine. He did not remove the keys, but left them in the ignition. Officer Osborne went to the passenger's side and put the vehicle's gearshift lever in the park position.
Officer Groves testified that he noticed a very strong odor of alcoholic beverage when he first opened the door of appellant's vehicle. Appellant did not wake up when Officer Groves reached over to turn off the engine. The officers eventually woke the appellant, asked him if he was okay and requested to see his driver's license and insurance card. Appellant had difficulty locating his license and he had slurred and mumbled speech. When asked if he had anything to drink, appellant stated that he had four beers and some rum at the Pigskin Bar.
At this point, Officer Osborne asked appellant to step out of his vehicle to conduct field sobriety tests. Appellant's eyes were bloodshot, he stumbled to some extent, and Officer Osborne continued to detect the odor of alcohol. Appellant participated in several field sobriety tests and was placed under arrest.
The police charged appellant with operating a motor vehicle under the influence of alcohol in violation of Athens City Code Section 7.03.07(A)(1). Appellant filed a motion to suppress evidence alleging that he had been illegally detained during the initial police encounter and that he was arrested without probable cause. The trial court denied the motion. Appellant entered a plea of no contest to the charge and subsequently filed a timely notice of appeal. Appellant raises one assignment of error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS APPELLANT WAS SUBJECTED TO AN UNREASONABLE SEIZURE UNDER STATE V. BARTH, THE FOURTH AMENDMENT AND ARTICLE ONE, SECTION FOURTEEN OF THE OHIO CONSITUTION, UNDER THE EXCULSIONARY RULE, ALL EVIDENCE SHOULD HAVE BEEN SUPPRESSED DUE TO THE FACT HE WAS SEIZED WITHOUT A REASONABLE AND ARTICULABLE SUSPICION HE HAD VIOLATED THE LAW.
In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, e.g., State v. Mills (1992),62 Ohio St.3d 357, 366, citing State v. Fanning (1982), 1 Ohio St.3d 19,20; see, also, State v. Williams (1993), 86 Ohio App.3d 37, 41. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, unreported. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Williams, supra; Fausnaugh, supra.
The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, prohibit unreasonable governmental searches or seizures. The issue presented by the appellant is whether he was "seized" for Fourth Amendment purposes when Officer Groves opened the door to his vehicle reached in and turned off the engine. Appellant is no longer challenging the existence of probable cause for his arrest.
"[A] person has been `seized' within the meaning of theFourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall (1980), 446 U.S. 544. The Mendenhall court explained at 553-554:
 We adhere to the view that a person is `seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but `to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' United States v. Martinez-Fuerte, 428 U.S. 543, 544. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
Thus, to constitute a seizure for Fourth Amendment purposes, there must be either the application of physical force or submission by the subject to an officer's show of authority. California v. Hodari D. (1991),499 U.S. 621. Further, in determining if appellant was seized, we apply a totality of the circumstances test. State v. Bobo (1988),37 Ohio St.3d 177. That is to say, we view the entire encounter as a whole and do not just focus on one factor.
Applying this test, we conclude that appellant was "seized" forFourth Amendment purposes when Officer Groves opened the door to his vehicle and turned off the engine. These acts constituted a sufficient level of intrusion that would result in a reasonable person's belief that he was not free to leave. See also State v Barth, (June 7, 2000), Lake App. No. 99-L-058, where the eleventh district held that opening the doors to a "running" car parked on a department store lot in the early morning hours is a seizure. However, the mere fact that the appellant was seized does not mean the officer's acted illegally. Rather, the proper focus turns now to the reasonableness of their conduct. See _LaFave, Search and Seizure, 3rd Ed. § 7.4.
While the trial court apparently approached the case under a traditional Terry v. Ohio (1968), 392 U.S. 1 analysis, i.e. a reasonable articulable suspicion that appellant had committed a crime or traffic offense, we conclude that the state introduced ample evidence to establish that the police proceeded under exigent circumstances, i.e. entry of the vehicle to aid a person potentially in distress.
Society expects police officers to respond in emergency situations. The need to protect life or avoid serious injury is often justification for what otherwise would be illegal, absent the exigent circumstances. SeeKatz, Ohio Arrest, Search and Seizure, 2001 Ed., § 10.2. Accordingly, courts have recognized the need for police to enter vehicles to aid a person in apparent distress. See LaFave, supra, at § 7.4(e) and the cases noted there. When an officer finds an unconscious, disoriented or injured person in a vehicle, it is reasonable for the officer to enter the vehicle to give aid and to determine the cause of the condition. Id. As the Alaska Supreme Court noted in Anchorage v.Cook (1979), 598 P.2d 939, 942:
 * * * it was entirely reasonable for the officer to open the door and awaken Cook and thereafter request that he get out of the vehicle. This intrusion into Cook's liberty was of little moment when weighed against society's interest in furnishing aid to persons who, in like circumstances may in fact be in need of immediate medical attention * * *.
The touchstone of a Fourth Amendment analysis is always the reasonableness of the government's intrusion upon the individual's personal liberty. See Terry, supra and LaFave, supra at § 7.4. Reasonableness is determined by balancing the public interest at stake against the individual's right of freedom from arbitrary governmental interference. United States v. Brignoni-Ponce (1975), 422 U.S. 873, 878. Appellant contends that it was unreasonable for the officers to open the truck doors without first attempting to awake him. He complains that the immediate act of opening the doors without any attempt to arouse him distinguishes this case from other aid to potentially distressed motorists cases. We disagree. The officers acted properly for several reasons. First, since the truck was running and in gear, it was possible that it could go forward into traffic or a pedestrian at anytime. Second, awaking appellant could conceivably have startled him and caused the same result. Third, time is often of the essence in emergency situations. If the appellant's condition was the result of a medical emergency, a one or two minute delay might make a significant difference in the outcome. Finally, the facts do not involve a motorist who has pulled off the road in what could be construed as an effort to rest. Nor do they even suggest that appellant got tired of waiting for an order to be delivered and accordingly pulled into an adjacent parking spot. Motorists normally do not fall asleep at the drive-thru window no matter how slow the service is.
When we balance the public's interest in providing aid to persons in distress against the minimal intrusion into appellant's privacy, we can only conclude that the officers acted reasonably. Thus, their seizure of the appellant did not violate his rights under the Ohio or United States Constitutions. Because the trial court properly overruled appellant's motion to suppress, we affirm that decision.
The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Evans, J.: Concur in Judgment and Opinion.